UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

NATHAN S. MARLOW,                      )
                                       )
            Petitioner,                )
                                       )
v.                                     )        Nos.:  3:23-CV-371-TAV-DCP
                                       )               3:18-CR-006-TAV-DCP-1
UNITED STATES OF AMERICA,              )
                                       )
            Respondent.                )

## MEMORANDUM OPINION

Petitioner Nathan Marlow has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Case No. 3:23-CV-371, Doc. 1; Case No. 3:18-CR-6 ("Crim. Case"), Doc. 657].[1]  Also before the Court are petitioner's Motion for Reconsideration of Motion for Default Judgment [Doc. 11], Motion for Leave to File Amended Pleading [Doc. 16], Motion for Appointment of Counsel [Doc. 17], Motion for Leave to Conduct Discovery [Doc. 18], Motion for Leave to Expand the Record [Doc. 19], and Motion for Evidentiary Hearing [Doc. 20].  The government has responded in opposition to petitioner's original motion [Doc. 8].  For the reasons explained below, petitioner's Motion for Reconsideration of Motion for Default Judgment [Doc. 11] will be **DENIED**.  Then, his Motion for Leave to File Amended Pleading [Doc. 16] will be **GRANTED in part** and **DENIED in part**.  Because, based on the record, it plainly appears that petitioner is not entitled to relief, it is not necessary to hold an evidentiary

---

[1] All docket citations refer to the instant civil case number unless otherwise specified.

hearing,[2] and petitioner's § 2255 motion [Doc. 1; Crim. Case, Doc. 657] will be **DENIED**. Additionally, petitioner's remaining pending motions [Docs. 17, 18, 19, 20] will be **DENIED as moot**.

## I. Background

Petitioner was indicted on charges of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One); conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (Count Two); and distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2 (Count Three) [Crim. Case, Doc. 52]. On September 27, 2019, petitioner pleaded guilty to Counts One and Two at a hearing before United States Magistrate Judge Debra C. Poplin [Crim. Case, Doc. 365]. On October 16, 2019, United States District Judge Thomas W. Phillips adopted Judge Poplin's Report and Recommendations as to petitioner's guilty plea [Crim. Case; Doc. 444]. In pertinent part, petitioner stated the following in response to Judge Poplin's questions during his change of plea hearing:

> Q: Mr. Marlow, have you received a copy of the indictment in your case?
> A: Yes, your Honor.
> Q: All right. Have you had sufficient time to discuss the charges against you with Mr. Shipley?
> A: Yes, your Honor.

---

[2] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

2

Q: Have you told Mr. Shipley everything that you know about your case?
A: Yes, your Honor.
Q: Do you believe that Mr. Shipley is fully aware of all the facts upon which the charges against you are based?
A: Yes, your Honor.
Q: Has Mr. Shipley advised you of the nature and meaning of all the charges contained in the indictment?
A: Yes, your Honor.
Q: Did he explain the meaning of any words in the indictment that you may not have understood?
A: Yes, your Honor.
Q: Has Mr. Shipley specifically advised you as to every element of the charged offenses that the government must prove beyond a reasonable doubt in order to obtain a conviction?
A: Yes, your Honor. . . .
Q: Has Mr. Shipley explained the terms of the plea agreement to you?
A: Yes, your Honor.
Q: Are you satisfied with Mr. Shipley's advice and [the] representation that he has given you?
A: Yes, your Honor.

[Crim. Case, Doc. 584, pp. 5–6].

The second revised presentence investigation report ("RPSR") calculated petitioner's criminal history score at one [RPSR ¶ 54]. An additional two points were added because defendant committed the instant offense while under another sentence in Knox County, Tennessee Criminal Court [*Id.* ¶ 55]. Therefore, a total of three criminal history points resulted in a criminal history category of II [*Id.* ¶ 56]. Based upon a total offense level of 38 and a criminal history category of II, the RPSR calculated petitioner's guideline range as 262 to 327 months' imprisonment [*Id.* ¶ 74]. At sentencing, the Court determined that an obstruction-of-justice enhancement did not apply and varied downward two levels, resulting in a total offense level of 34 and a guideline range of 168 to 210 months' imprisonment [Crim. Case, Doc. 641, pp. 60–61].

3

The Court ultimately sentenced petitioner on February 17, 2022, to 180 months' imprisonment to be followed by 5 years of supervised release [Crim. Case, Doc. 633]. Petitioner appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed his convictions and sentence [Crim. Case, Doc. 645]. Specifically, the Sixth Circuit noted that "there are no ineffective-assistance-of-counsel or prosecutorial-misconduct issues apparent in the record" and upheld the substantive and procedural reasonableness of petitioner's sentence [*Id*. at 4–5]. On October 16, 2023, petitioner filed the instant § 2255 motion [Crim. Case, Doc. 657].

## II.   Legal Standard

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ."  28 U.S.C. § 2255.  To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Moreover, "claims [that] are stated in the form

4

of conclusions without any allegations of facts in support thereof . . . [are] legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974).

## III. Analysis

### A. Reconsideration of the Court's Order on Default Judgment

Petitioner moves the Court pursuant to Federal Rule of Civil Procedure 59(e) [Doc. 11] to reconsider its February 7, 2024, Order [Doc. 9] in which the Court denied petitioner's motion for default judgment [Doc. 5] on grounds that the government had failed to timely respond to petitioner's motion. In that Order, the Court noted that default judgment is unavailable in the § 2255 context [Doc. 9, p. 1]. In his instant motion, petitioner argues that the Court should impose sanctions (e.g., barring a responsive filing from the government) against the government for its delayed response [Doc. 11, pp. 2–3].

The Court's February 7, 2024, Order [Doc. 9] was interlocutory in character because it resolved "fewer than all the claims or the rights and liabilities of fewer than all the parties" to this action. Fed. R. Civ. P. 54(b). The Sixth Circuit has recognized that "[d]istrict courts have authority both under [federal] common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted). This authority allows the court to "afford such relief . . . as justice requires." *EEOC v. Dolgencorp, LCC*, 206 F. Supp. 3d 1309, 1312 (E.D. Tenn. 2016) (quoting *Rodriguez*, 89 F. App'x at 959). Reconsideration of an interlocutory order is proper when the movant shows either: "(1) an intervening change of

5

controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citation omitted). However, "[m]otions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009). Nor do such motions present an opportunity to raise new legal arguments that were available before the interlocutory order issued. *See Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984); *Walker v. Conseco Servs., LLC*, 252 F. Supp. 2d 524, 528–29 (N.D. Ohio 2003).

The Court finds petitioner has not established any basis for reconsideration. As an initial matter, he has not identified "an intervening change of controlling law" or "new evidence" warranting relief. *Louisville/Jefferson*, 590 F.3d at 389. Indeed, despite arguing that the Court overlooked or underemphasized certain arguments raised by petitioner in his original motion, he nowhere cites legal authority contradicting the Court's determination that "default judgments are unavailable in the § 2255 context[.]" [Doc. 9, p. 1 (first citing *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); and then *Davis v. United States*, No. 305CR112, 2021 WL 3409250 at *2 (E.D. Tenn. Aug. 4, 2021))]. And to the extent he requests alternative sanctions against the government, "[a] motion for sanctions must be made separately from any other motion and must describe the specific [sanctionable] conduct." Fed. R. Civ. P. 11(c)(2). Finally, the Court does not perceive "clear error or [ ]

manifest injustice" resulting from its denial of relief that is legally unavailable in the context of a § 2255 proceeding. *See Louisville/Jefferson*, 590 F.3d at 389.

Therefore, petitioner's Motion for Reconsideration of Motion for Default Judgment [Doc. 11] is **DENIED**.

### B. Amendment of Petitioner's Motion to Vacate

Petitioner moves pursuant to Federal Rule of Civil Procedure 15 to amend his motion to vacate [Doc. 16]. While he appears to acknowledge that his amendment is being proposed after the applicable statute of limitations has run, he argues that the information contained in his amended filings arose out of the same circumstances and therefore relates back to the original filing [*Id.* at 4 (citing Fed. R. Civ. P. 15(c)(1)(B))]. Specifically, he submits that his amended motion has "been revised and rearticulated to present the claims more fully than before," but ultimately raises the same grounds for relief as his original motion: ineffective assistance of counsel and prosecutorial misconduct [*Id.*].

Petitioner's memorandum elaborates on the arguments set forth in his motion for leave to file [*See* Doc. 15, pp. 2–4]. He submits that the proposed amended pleading "incorporate[s] the statement of Petitioner's former appointed criminal case attorneys, [*sic*] David L. Leonard, who has written candidly on the topic of Petitioner not having received accurate or effective assistance of counsel when Petitioner was misinformed about the sentence he would receive if he were not to plead guilty[.]" [*Id.* at 2]. Although he appears to cite this statement as "Exhibit 'A'" and later refers to "the letter from Attorney Leonard," the Court notes at the outset that no such attachment or letter appears to be appended to

7

petitioner's motion or memorandum of law [*Id.* at 2, 42; *see generally* Docs. 15, 16]. In any event, petitioner moves alternatively for the Court to permit leave to file a second, independent § 2255 motion on grounds that he alleges additional constitutional defects [Doc. 15, p. 3].

Federal Rule of Civil Procedure 15(a)(2) generally provides that "[a] party may amend its pleading only with the . . . court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further provides that a court "should freely give leave when justice so requires." *Id.* Rule 15(d), which governs supplemental pleadings, provides that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). In determining whether to permit an amendment, the Sixth Circuit has emphasized consideration of "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment," noting that "[d]elay by itself is not sufficient reason to deny a motion to amend." *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)) (citations omitted and punctuation regularized in original).

As for amendments that are proposed after an applicable statute of limitations, Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment "relates back" when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When ruling on motions to amend habeas petitions under section 2255, courts have sought

8

to determine "whether they address the same 'common core of operative facts' as the initial petition." *United States v. Kennedy*, No. 7:15-CR-9, 2025 WL 77891, at *9 (E.D. Ky. Jan. 10, 2025) (quoting *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016)). More specifically, "the key consideration is not the legal bases for the claims but whether they share a common core of operative facts." *Id.* at *10 (citing *James v. United States*, No. 2:15-CR-25, 2019 WL 4122189, at *4 (E.D. Tenn. Aug. 29, 2019) (Jordan, J.)).

Petitioner requests permission to add new arguments and factual support for the same substantive claims he already raised.[3] Specifically, petitioner originally raised three grounds for relief: prosecutorial misconduct, ineffective assistance of pretrial counsel, and ineffective assistance of sentencing counsel [Doc. 1, pp. 4–6]. His instant amended filing elaborates on these same three bases of relief. Substantively, portions of his amended memorandum function like a reply brief, specifically responding to certain arguments raised by the government. The Court will therefore determine the procedural and substantive propriety of petitioner's request.

### i. AEDPA's One-Year Limitation

Beginning with procedure, petitioner acknowledges that to the extent his instant motion proposes amending his habeas petition, such amendment is untimely under the

---

[3] Petitioner's filing of an amended memorandum is perhaps more aptly characterized as an amended pleading. *See Carter v. United States*, No. 109-CR-103, 2018 WL 1387065, at *5 (E.D. Tenn. Mar. 19, 2018) (liberally construing a pro se § 2255 memorandum as a pleading). However, even his original petition substantively incorporates by reference an accompanying memorandum [Doc. 1, p. 4 (citing Doc. 2) (stating "Please see the Memorandum of Law in Support" under each basis for relief)]. The Court sets aside these somewhat technical matters, as is appropriate when "liberally constru[ing]" pro se filings. *Simmons v. United States*, 142 S. Ct. 23, 24 (2021) (denial of petition for writ of certiorari).

9

Antiterrorism and Effective Death Penalty Act ("AEDPA") [*See* Doc. 16, p. 4].  *See* 28 U.S.C.A. § 2255(f)(1) (providing that a one-year period of limitation runs from the date on which judgment of conviction becomes final).  In other words, absent petitioner's showing that the proposed amendment(s) relate(s) back to the bases for relief asserted in his petition, his request should be denied as time barred.

### ii.  Relation Back and the Common Core of Facts

As this Court has held before in the ineffective assistance of counsel context, where "the attorney misstep now alleged is not similar in type to the asserted attorney shortcomings presented in [the original] pleading," "the newly-minted claim does not relate back to the timely claims in the motion to vacate."  *James*, 2019 WL 4122189, at *4.  In other words, courts examine relation back in the section 2255 setting at the granularity of factual allegations—not only at the more general level of the substantive legal claim(s) invoked by petitioner.  Here, some portions of petitioner's revised memorandum share a common core of operative facts with his original memorandum, while other portions do not [*Compare* Doc. 2 *with* Doc. 15].  For example, under the heading "Circumventing the Department of Justice's Policies," petitioner argues that federal prosecutors defied departmental directives relating to evidence and plea bargaining [Doc. 15, p. 22].  While his original memorandum discusses allegations of prosecutorial misconduct, there is no mention whatsoever of Department of Justice policies, save for a quoted inscription on the Main Justice building in Washington, D.C. [*See generally* Doc. 2; *id*. at 12; *see also* Doc. 1, p. 4 ("The Government committed prosecutorial misconduct.")].

10

Synthesizing the foregoing analysis, the Court will allow petitioner to supplement his original motion with arguments and factual allegations that relate back to the common core of facts he originally alleged. The Court will not consider, however, entirely novel arguments or factual allegations that do not relate back. Therefore, petitioner's Motion for Leave to File Amended Pleading [Doc. 16] is **GRANTED in part** and **DENIED in part**. To the extent that petitioner's contemporaneously filed memorandum [Doc. 15] elaborates upon common core facts animating his prosecutorial misconduct and ineffective assistance of counsel claims, the Court will consider his amended memorandum in its substantive analysis (*see infra* Section III(C)). To the extent that petitioner introduces entirely novel argumentation regarding, e.g., the Department of Justice's policy manual or certain facets of grand jury proceedings, the Court will disregard these supplemental arguments as they do not "relate back" within the meaning of Fed. R. Civ. P. 15(c)(1)(B) and are otherwise time barred by AEDPA.

### C. Petitioner's Motion to Vacate

#### i. Plea Agreement Waiver Provision

As a preliminary matter, the Court notes that petitioner has waived his right to file "any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack [his] conviction(s) or sentence, with two exceptions: [he] retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel" [Crim. Case, Doc. 363 ¶ 11(b)]. The Sixth Circuit expressly upheld the validity of petitioner's

plea agreement [*See* Crim. Case, Doc. 645, p. 3].[4]  While petitioner expressly confines his motion to these two excepted bases of relief, the Court notes at the outset that any other grounds for relief have been waived by valid plea agreement.

## ii. Prosecutorial Misconduct

Petitioner moves to vacate his conviction and sentence on grounds that the prosecution engaged in unconstitutional misconduct [Doc. 2, pp. 13–15].  Specifically, he argues that the government obtained evidence in bad faith by relying on a Tennessee officer, Josh Goins, whose credibility was subsequently questioned after he resigned due to misconduct [*Id*. at 13].   Additionally, he argues that the government withheld exculpatory evidence, including "initial interception of affidavit for Marlow's mobile phone; 2 drug purity affidavits for the methamphetamine that he was charged with; and the attempt to enhance Marlow's sentence with an obstruction of justice after he pled guilty" [*Id*.].  He also argues that prosecutors sought an excessive sentence in this case when compared to sentences obtained by his co-defendants [*Id*.].  Despite pleading guilty and waiving his right to a jury trial, petitioner also contends that "the prosecutions [*sic*] conduct infected the trial with unfairness" and that "the government allowed perjured testimony," presumably referring to grand jury testimony [*Id*. at 14–15].

In his supplemental filing, petitioner elaborates on the alleged misconduct by federal prosecutors who relied upon "the search warrants, tap warrants, affidavits, and statements

_____

    [4]  The Court notes that, despite this holding, petitioner appears to argue that "[his] plea agreement itself is invalid Constitutionally, as a result of Ineffective Assistance of Counsel[.]" [Doc. 15, p. 16].

12

prepared by Josh Goins" in their presentation of evidence to the grand jury [Doc. 15, p. 16]. According to petitioner, Goins "knowingly supplied money to informants for the express purpose of purchasing controlled substances" [*Id*. at 18]. More broadly, he contends that the "plea-not-trial system" has created perverse incentives for federal prosecutors who "manipulate the system to avoid standards of professional accountability" and "turn a blind eye to the 'messy details' of how a case was 'developed' or 'made' before it arrives to them" [*Id*. at 21–22].

Petitioner also elaborates on his earlier claim that prosecutors withheld evidence in this case [*Id*. at 26]. In addition to the initially cited examples, he submits that "[a]lthough not filed and not having received a docket number in every instance, the motions and papers nevertheless were formally 'Received' by the Clerk. Those documents, and the documents provided to the attorney(s) are recoverable and establish Petitioner's numerous requests for discovery, in different forms and types" [*Id*. at 27].

Finally, petitioner states that the government elicited false and perjured testimony from Jamie Hall and Peter Wooden at sentencing to attribute a drug weight to petitioner that far exceeded the weight attributed to his co-defendants [*Id*. at 31].

The government responds in opposition, first arguing that petitioner fails to substantiate his allegations of misconduct with sufficient factual support [Doc. 8, p. 4]. It contends that petitioner "has not established that the government did not seek the warrants in this case in good faith," nor has he explained how his allegations regarding Goins invalidated the evidence in this case [*Id*. at 5]. Next, the government points to the record

13

to demonstrate that it provided certain documents to petitioner during discovery [*Id.*]. Finally, it denies his allegation that the government sought excessive punishment, citing 18 U.S.C. § 3553 and the Sixth Circuit's upholding of his sentence's substantive reasonableness [*Id.*].

### 1. Grand Jury Proceedings

In evaluating a prosecutorial misconduct claim in the grand jury context, the United States Supreme Court has asked whether "there was any misconduct by the prosecution that otherwise may have influenced substantially the grand jury's decision to indict, or whether there is grave doubt as to whether the decision to indict was so influenced." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988). More broadly, the Court has also made clear that "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings[,]" which "would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself." *United States v. Williams*, 504 U.S. 36, 50 (1992) (citation omitted).

Petitioner's allegations regarding the government's reliance on Tennessee law enforcement officers and its presentation of evidence to the grand jury "do not, even when considered cumulatively, raise a substantial question, much less a grave doubt, as to whether they had a substantial effect on the grand jury's decision to charge*." Bank of Nova Scotia*, 487 U.S. at 263. First, as the government points out, even if petitioner's allegations

14

regarding Officer Goins are proven true, he has not alleged, much less proved, that the search warrants that led to certain evidence in this case were outright invalid [*See* Doc. 8, p. 5]. Moreover, as part of his plea agreement, petitioner agreed and stipulated to facts establishing that the government was prepared to present significant evidence, including "the testimony of several witnesses," "text messages and telephone calls," "[r]ecords obtained from Western Union and MoneyGram," and "approximately two [ ] kilograms" of seized methamphetamine [Crim. Case, Doc. 363, p. 3]. So, petitioner's allegations regarding the subsequent misconduct of a single officer involved in a broader investigation do not raise "grave doubt." *Bank of Nova Scotia*, 487 U.S. at 259.[5] And to the extent petitioner challenges generally the evidentiary process during grand jury proceedings, the Court notes that "certain constitutional protections afforded defendants in criminal proceedings have no application before [grand juries]. *Williams*, 504 U.S. 36, 49 (1992).

## 2. Disclosure of Exculpatory Evidence

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Subsequent rulings have clarified the three components of a "true *Brady* violation: [t]he evidence at issue must be

---

[5] Petitioner reads *Bank of Nova Scotia* to require that an indictment be dismissed where "false or perjured testimony [ ] substantially prejudice[d] the defendant" [Doc. 15, p. 19]. While the Court disagrees with the purported specificity of the Supreme Court's holding in that case, even applying petitioner's gloss of the case to these facts, the Court does not find that petitioner has adduced sufficient evidence to substantiate this claim.

15

favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Even assuming *arguendo* that petitioner's allegations involve material evidence, he has not established that the government suppressed any such evidence, nor has he shown that prejudice ensued. *See id*. Contrary to petitioner's claim in his original petition that the government withheld drug purity reports and/or the DEA-6 forms containing obstruction-of-justice allegations, the government notes that this Court already determined on the record that these materials were provided to petitioner's counsel [*See* Crim. Case, Doc. 601, pp. 5–6]. More recently, petitioner accuses the government of withholding the "warrants and affidavits for the initial applications for both the search and the taps" [Doc. 15, p. 27]. But the Court's reasoning in the same prior Order applies to this allegation, as well: "'[s]olemn declarations in open court carry a strong presumption of verity. . . . While [d]efendant has expressed a desire to file suppression motions throughout his case, the Court finds that he was adequately counseled and was of sound mind to decide whether or not to plead guilty" [Crim. Case, Doc. 601, p. 7 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))]. By pleading guilty and stipulating to facts which satisfy the elements of the charge offense, petitioner was not prejudiced by the government's alleged failure to produce materials underlying the collection of evidence.

16

### 3. Excessive Sentencing

Regardless of petitioner's allegations regarding the government's seeking excessive punishment in his case, the Sixth Circuit has already upheld petitioner's sentence on direct appeal as procedurally and substantively reasonable [*See* Crim. Case, Doc. 645]. Accordingly, the Court need not address these allegations of prosecutorial misconduct further. *See Richard v. United States*, 85 F.3d 629 (6th Cir. 1996) (denying petitioner's appeal of his denied § 2255 petition due in part to his sentencing arguments having already been resolved against him on direct appeal); *see also United States v. Davidson*, No. 3:19-CR-36, 2023 WL 2759024, at *1 (E.D. Ky. Mar. 31, 2023) (adopting magistrate's recommendation to deny § 2255 prosecutorial misconduct and excessive sentencing claims because petitioner "d[id] not assert any nonconclusory allegations supporting a basis for his claims").

In conclusion, having assessed petitioner's various allegations and arguments regarding prosecutorial misconduct, the Court does not find that petitioner is entitled to relief under § 2255 because no error of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings" is evident from the record. *See Watson*, 165 F.3d at 488 (citing *Brecht*, 507 U.S. at 637). Because he has not proved by a preponderance of the evidence that the government engaged in prosecutorial misconduct, *see Pough*, 442 F.3d at 964, his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Case No. 3:23-CV-371, Doc. 1; Crim. Case, Doc. 657] is **DENIED** as to this ground.

### iii. Ineffective Assistance of Counsel

Petitioner alleges that he received constitutional defective counsel at multiple stages of his case, beginning with pre-trial investigation and plea bargaining [Doc. 2, p. 16]. First, he argues that his first three assigned attorneys—Gerald L. Gulley, Jr., Joshua D. Hedrick, and Corey B. Shipley—failed to inform him of the circumstances and consequences of pleading guilty as opposed to proceeding to trial [*Id.* at 16–17]. Instead, he submits that all three attorneys "did nothing but push [him] to plead guilty from the very beginning, without investigating the facts of this case" [*Id.* at 19]. He also contends that these appointed attorneys refused to file certain pre-trial motions despite petitioner's requests [*Id.* at 17–18]. His fourth appointed attorney, David L. Leonard, allegedly informed him that "if only [petitioner] had him as his counsel from the beginning of his case, he could have gotten him a lesser sentence" [*Id.* at 18].

Second, and somewhat relatedly, petitioner argues that none of his appointed attorneys conducted an adequate pre-trial investigation [*Id.* at 20]. He specifically cites as evidence attorney Shipley's failure to "move the Court for a private investigator to independently investigate his case" [*Id.* at 20–21]. He also cites Shipley's failure to challenge the purity of methamphetamine in this case [*Id.* at 21–22]. Ultimately, petitioner states that "he merely acquiesced to Shipley's advise [*sic*] to answer the district court's questions during the plea colloquy affirmatively" [*Id.* at 23].

Third, petitioner asserts that his counsel failed to negotiate a favorable plea agreement [*Id.* at 24]. He claims that the plea agreement into which he entered "did not

18

have any benefit for [him]" and that it "was a fast way for his attorney to dispose of the case and move on" [*Id*. at 26].  As a result, and in similar fashion to his arguments under the first and second sub-headings of his memorandum, he argues he was misled to accept the agreement and forego a trial in this matter [*Id*. at 28–29].

As for sentencing, petitioner alleges that his counsel failed to properly explain the presentence report to him and to timely object to certain information contained therein [*Id*. at 29].  Specifically, he argues that he should have qualified as a "zero-point offender" and that Officer Goins' credibility (see *supra* Section III(C)(ii)) should have been challenged [*Id*. at 32].  Petitioner also takes issue with his sentencing counsel's filing of a notice of appeal insofar as he wished to raise additional grounds beyond the exceptions provided in his plea agreement's waiver of appeal, including "abuse of discretion, unwarranted sentence disparity, and methamphetamine purity" [*Id*. at 37].

In his supplemental filing, petitioner reiterates that none of this first three appointed attorneys undertook certain investigatory efforts, including "the actions of the Tennessee Drug Task Force in general, and officer Josh Goins in particular" [Doc. 15, p. 9].  He also points to "the numerous letters or Motions he personally filed with the Court" as evidence of his dissatisfaction with his appointed counsel [*Id*. at 32–33].  With respect to attorney Gulley, in particular, petitioner states that on the date of his hearing, counsel "turned to [him] and asked what he should say or argue on the Suppression for the Wiretap" [*Id*. at 34].  Petitioner goes on to acknowledge that the Court replaced Gulley with attorney

Shipley, but he argues that "problems with counsel directly prejudiced [him] in creating circumstances the next attorney could not remedy" [*Id*. at 35].

Petitioner further supplements his motion by arguing that "an amount of methamphetamine was attributed to [him] [that] was far greater than that attributed to his equal co-defendants" [*Id*. at 38]. Here again, he ascribes prejudice to counsel's failure to investigate the quantity involved in this conspiracy beyond what the government introduced and argued at sentencing [*Id*. at 39]. Petitioner also submits that attorney Shipley repeatedly told him that he would receive a life sentence if he did not accept the plea agreement [*Id*. at 41].

Finally, petitioner "refines" his claim regarding attorney Leonard's defective appeal filing to assert that "any ineffectiveness" was "constructive ineffectiveness" [*Id*. at 7].

The government responds by noting that the record reflects petitioner's counsel informed petitioner of the consequences of pleading guilty [Doc. 8, p. 6 (citing Crim. Case, Doc. 584, p. 6)]. Additionally, the Court directly informed petitioner of the consequences of pleading guilty prior to his guilty plea, and declarations in open court are not easily overcome [*Id*.]. Alternatively, the government contends that petitioner has not adequately demonstrated deficiency and prejudice under the *Strickland* standard [*Id*.].

As for pre-trial investigation, the government similarly points to the change of plea hearing in which petitioner stated on the record that he believed his attorney was aware of all the facts in this case [*Id*. (citing Doc. 8, p. 5)]. Although petitioner challenges the purity

20

of methamphetamine attributable to him, he does not identify specific evidence that his counsel overlooked in preparing for sentencing [*Id*. at 6–7].

The government next contends that petitioner's counsel did effectively negotiate a plea agreement in his favor because it agreed to dismiss a drug-distribution count that carried a mandatory minimum of ten years, to not oppose a two-level reduction for acceptance of responsibility, and to stipulate that petitioner would not qualify for a leadership-role enhancement [*Id*. at 7]. In any event, his counsel filed and prevailed on an objection to the presentence report, ultimately persuading the Court that an obstruction-of-justice enhancement should not apply [*Id*.]. As for his remaining arguments about "zero-point offenders" and the quantity of methamphetamine attributable to him, the government again reiterates petitioner's stipulations in the plea agreement [*Id*. at 7–8].

As for petitioner's final objection to counsel's filing of a notice of appeal, the government notes that he filed his own pro se notice of appeal, which was ultimately heard and denied by the Sixth Circuit [*Id*. at 8].

### 1. Pre-Trial Investigation and Plea Bargaining

Claims of ineffective assistance of counsel are cognizable under § 2255, including claims involving the plea bargaining process. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003); Hill v. Lockhart, 474 U.S. 52, 58 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, he

must identify specific acts or omissions to prove that counsel's performance was deficient, and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, a petitioner must also establish "a reasonable probability that, but for counsel's [acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). "But *Strickland* declares that 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Schwieterman v. Smith*, 750 F. App'x 441, 450 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 690-91). Because a petitioner "must satisfy *both* prongs of *Strickland* to obtain relief on an ineffectiveness claim, the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc); *accord Strickland*, 466 U.S. at 697.

The Court's analysis begins with petitioner's statements in open court at his change of plea hearing held on September 27, 2019 [*See* Crim. Case, Doc. 584]. As already recounted (*see supra* Section I), petitioner was asked several direct and explicit questions regarding his understanding of the consequences of pleading guilty and his satisfaction with attorney Shipley's counsel leading up to the change of plea hearing, including his investigation into the facts of petitioner's case [*See id.* at 5–6]. In response to each of these questions, petitioner responded "Yes, your Honor" [*Id.*]. As the Supreme Court has long recognized, these statements "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, to the extent that petitioner now presents "conclusory allegations unsupported by specifics," such arguments are "subject to summary dismissal." *Id.* [*See also* Crim. Case, Doc. 601, pp. 4–9 (denying petitioner's motion to withdraw his plea on similar grounds)].

Even petitioner's more particularized ineffective assistance of counsel arguments, however, do not warrant vacation of his convictions or sentence. As an initial matter, even assuming *arguendo* that petitioner could demonstrate *Strickland* deficiency on the part of attorneys Gulley or Hedrick, his arguments as to the prejudice prong confront the aforementioned "formidable barrier" of his statements in open court. *See Blackledge*, 431 U.S. at 74. Given that petitioner stated that he was satisfied with attorney Shipley, who succeeded attorneys Gulley and Hedrick in representing petitioner in this matter, the Court finds that there is not "a reasonable probability that, but for" the acts or omissions of

23

attorneys Gulley and Hedrick, "the result of the [change of plea] proceeding would have been different." *Strickland*, 466 U.S. at 694. That is, petitioner's decision to plead guilty, and to waive his right to a trial, was undertaken with his complete knowledge of all three attorneys' representation of him; regardless, he indicated that attorney Shipley had provided competent counsel and he pled guilty only after the Court expressly informed him of the consequences of pleading guilty, the rights he was foregoing, and the potential penalties of the offenses with which he was charged [Crim. Case, Doc. 584, pp. 7–14].

Contrary to petitioner's assertion that the plea agreement into which he entered "did not have any benefit for [him]," the government has identified numerous, significant benefits conferred to petitioner as a result of his decision to plead guilty [Doc. 2, p. 26; Doc. 8, p. 7]. For example, the government agreed to dismiss a count that carried a mandatory minimum term of imprisonment of ten years, which would have almost certainly impacted the overall sentence that petitioner received [*See* Crim. Case, Doc. 363 ¶ 2]. And in any case, he has certainly not identified any defect in the terms of the plea agreement sufficient to show that his counsel's plea negotiations with the government rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

In sum, petitioner has not demonstrated constitutionally deficient assistance of counsel during the pre-trial investigation and plea agreement phase of his case.

24

## 2. Sentencing and Appeal

While clarifying certain contours of the prejudice prong, the Supreme Court recently affirmed *Strickland*'s continued applicability to ineffective assistance claims involving the sentencing phase. *See Thornell v. Jones*, 602 U.S. 154, 163 (2024). Therefore, the same test outlined before (*see supra* Section III(C)(iii)(1)) applies to this phase, as well, requiring petitioner to show "a substantial, not just conceivable, likelihood of a different result." *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).

Upon review of the transcript of petitioner's sentencing hearing held on February 17, 2022, the Court does not find that he has overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" during the sentencing phase, either. *See Strickland*, 466 U.S. at 689. Attorney Leonard argued at length during this hearing regarding the obstruction-of-justice enhancement, including cross-examining the government's witnesses offered to support the enhancement [*See* Crim. Case, Doc. 641]. Ultimately, United States District Judge R. Leon Jordan ruled that "the proof in this case by the government is insufficient to support that enhancement" [*Id.* at 60]. In light of this finding and after comparing the guideline range that petitioner faced with those of his co-defendants, Judge Jordan determined that his new guideline range would be 168 to 210 months' imprisonment—a significant reduction from the 262 to 327 months he initially faced [*Id.* at 60–61]. Petitioner's counsel at sentencing, in other words, prevailed in objecting to the enhancement and ultimately shifted his applicable guideline range downward by nearly eight years' imprisonment. Such a result belies petitioner's

25

assertion that attorney Leonard did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla*, 545 U.S. at 380.

Finally, as the government notes, petitioner filed his own pro se notice of appeal after the Court sentenced him [*See* Crim. Case, Doc. 635], which was ultimately denied by the Sixth Circuit [*See* Crim. Case, Docs. 645–47]. So, to the extent petitioner alleges any ineffective assistance of counsel as to the filing of an appeal following sentencing, the record directly contradicts such claims as he had complete control over the content of his pro se filings.

In conclusion, having assessed petitioner's various allegations and arguments regarding ineffective assistance of counsel at various stages of his case, the Court does not find that petitioner is entitled to relief under § 2255 because no error of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings" is evident from the record. *See Watson*, 165 F.3d at 488 (citing *Brecht*, 507 U.S. at 637). Because he has not proved by a preponderance of the evidence that any of his appointed attorneys provided constitutionally deficient counsel that actually prejudiced him, *see Strickland*, 466 U.S. at 687, his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Case No. 3:23-CV-371, Doc. 1; Crim. Case, Doc. 657] is **DENIED** on its only remaining ground.

26

### D. Remaining Pending Motions

Having denied petitioner's motion to vacate, the Court now addresses his other motions. In his Motion for Appointment of Counsel [Doc. 17], petitioner moves the Court to appoint counsel to represent him in this habeas action given the complexity of his case. "There is no right to counsel in postconviction proceedings," and, in any event, the Court has already determined that petitioner's motion lacks merit. *Garza v. Idaho*, 586 U.S. 232, 245–46 (2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Accordingly, petitioner's Motion for Appointment of Counsel [Doc. 17] is **DENIED as moot**.

Petitioner's Motion for Leave to Conduct Discovery [Doc. 18], Motion for Leave to Expand the Record [Doc. 19], and Motion for Evidentiary Hearing [Doc. 20] each advance arguments in support of further factual development to substantiate claims raised in petitioner's motion to vacate. But given that the Court has already denied petitioner's motion on its merits, any such additional factual development would be futile. *See Watson v. United States*, No. 3:01-CR-55, 2015 WL 519402, at *3 (E.D. Tenn. Feb. 9, 2015) (Varlan, J.) (holding that an evidentiary hearing would be futile after addressing the merits of § 2255 petitioner's motion). Accordingly, petitioner's remaining pending motions [Docs. 18, 19, 20] are **DENIED as moot**.

## IV. Conclusion

For the reasons stated above, petitioner's Motion for Reconsideration of Motion for Default Judgment [Doc. 11] is **DENIED**. His Motion for Leave to File Amended Pleading [Doc. 16] is **GRANTED in part** and **DENIED in part**. The Court finds that petitioner is

27

not entitled to relief pursuant to 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 1; Crim. Case, Doc. 657] is **DENIED**, his remaining pending motions [Docs. 17, 18, 19, 20] are **DENIED as moot**, and this civil action will be **DISMISSED**.  A hearing is unnecessary in this case.  The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE.**  28 U.S.C. § 2253; Fed. R. App. P.  22(b).  A separate judgment will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE